GEORGE P. BAY

*v.*

SIMEON B. WILLIAMS.

*Filed at Ottawa November 17, 1884.*

1. PURCHASER *from mortgagor—liability on assuming mortgage debt.* A purchaser of mortgaged premises from the mortgagor, who assumes payment of the mortgage debt, or who accepts a conveyance reciting his assumption of the same with a knowledge of such recital, will at once become personally liable to the mortgagee for the mortgage indebtedness; and he can not defeat the mortgagee's right to hold him responsible, by procuring a release from the mortgagor.

2. SAME—*consideration for assuming mortgage debt by the purchaser.* The acceptance by the purchaser of a conveyance by a mortgagor of his equity of redemption in mortgaged premises, is a sufficient consideration for a promise by the grantee to assume and pay the mortgage debt.

3. ACTION—PARTIES—*promise to pay a debt to a third person.* A promise by one, upon a valuable consideration moving from another, to pay the debt of that other to a third person, inures to the benefit of such third person; and his right to maintain an action upon it is vested in him by force of the agreement itself. The express assent of the beneficiary is not essential to his right to avail of its benefits.

4. INDEMNITY TO DEBTOR *against his own debt—whether availing to his creditor, and in what way.* Where a debtor holds an indemnity against his debt, or other security for his protection, his creditor can reach such indemnity or security only in a court of equity, and there only when his debtor is insolvent, or on some other equitable grounds.

| | |
|---|---|
| 112 | 91 |
| 172 | 291 |
| 71a | 502 |
| 112 | 91 |
| 75a | 207 |
| 112 | 91 |
| 175 | 470 |
| 78a | 659 |
| 112 | 91 |
| 178 | 145 |
| 112 | 91 |
| 180 | 54 |
| 84a | 632 |
| 112 | 91 |
| 184 | 566 |
| 112 | 91 |
| 187 | 220 |
| 112 | 91 |
| 186 | [1]622 |
| 89a | [1]169 |
| 112 | 91 |
| 101a | [2]447 |
| 112 | 91 |
| 212 | [1]171 |

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. JOHN WOODBRIDGE, for the appellant:

There is no sufficient evidence of the assumption of the mortgage by Bay. The deed to him, alone, is insufficient. *Thompson* v. *Dearborn,* 107 Ill. 88.

A release of a debt or claim for damages by one of many who hold the debt or claim jointly, is a full discharge of all. 1 Parsons on Contracts, 26; *Piersons* v. *Hooker,* 3 Johns. 70; *Austin* v. *Hall,* 13 id. 28; *Bulkley* v. *Dayton,* 14 id. 387; *Bruen* v. *Marquand,* 17 id. 58; *Halsey* v. *Fairbanks,* 4 Mason, 206; *Tuckerman* v. *Newhall,* 17 Mass. 581; *Wiggin* v. *Tudor,* 23 Pick. 444.

Where parties make a contract which either directly or incidentally benefits a mere stranger, they may at their pleasure abandon it, and mutually release each other. *Crowell* v. *Currier,* 27 N. J. Eq. 153; *Crowell* v. *Hospital,* 27 id. 650.

The mortgagee's right to sue upon the promise of a purchaser has been placed upon his right to equitable subrogation. *Crowell* v. *Hospital,* 27 N. J. Eq. 650; *Trustees* v. *Anderson,* 30 id. 368; *Youngs* v. *Trustees,* 31 id. 300; *Parsons* v. *Freeman,* Amb. 115; *Tweddell* v. *Tweddell,* 2 Bro. Ch. 101; *Woods* v. *Huntingford,* 3 Ves. 128; *Butler* v. *Butler,* 5 id. 535; *Waring* v. *Ward,* 7 id. 337; *Earl of Oxford* v. *Lady Rodney,* 14 id. 417; *Barham* v. *Earl of Thanet,* 3 M. & K. 607; *Barry* v. *Harding,* 1 J. & La T. 485; 3 Johns Ch. 229; 1 Sugden on Vendors, 195–216; Cooke on Mortgages, 476; *Klapworth* v. *Dressler,* 2 Beas. 62.

So the mortgagee's right to sue is said to rest upon the fact that the contract of the grantee of the mortgagor is made for the benefit of the mortgagee. (*Bird* v. *Lanius,* 7 Ind. 615.) And it is to rest on the principle of novation. *Urquhart* v. *Brayton,* 12 R. I. 172.

The parties to the contract may rescind it before it is acted upon by the person for whose benefit it was made. *Day* v. *Patterson*, 18 Ill. 116; *Durham* v. *Bischof*, 47 id. 216; *Miller* v. *Billingly*, 41 id. 467; *Butterfield* v. *Hadstrom*, 7 N. H. 345.

Messrs. DENT, BLACK & CRATTY BROS., for the appellee, contended that the appellant was personally liable for the mortgage debt. *Daub* v. *Engelbach*, 109 Ill. 267.

The release was obtained without consideration, and is no better than if obtained after suit brought.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears from the record in this case, that Mrs. Camelia J. Williams, on the 11th day of March, 1873, sold to Newman & Sissons forty acres of land lying several miles south of the city of Chicago, for the sum of $12,000, and after deducting the advanced payment, took their promissory notes, payable in installments. To secure the deferred payments they executed to Thomas Dent a trust deed on the property, containing the usual powers conferred by such instruments. Appellant, on the 8th day of September of the same year, purchased the land of Newman & Sissons for the consideration named in their warranty deed, of $24,000. Their deed contained an express promise on the part of appellant to pay and discharge the debt secured by the trust deed on the land in favor of Mrs. Williams. The provision is in this language: "Which said notes for principal and interest, said party (George P. Bay) expressly agrees to pay." Appellant afterwards, on the 7th day of October, 1878, applied to Sissons, and he, for the expressed consideration of one dollar and other sufficient considerations, released appellant from this obligation. Appellant also applied to Newman, who had asked to be discharged from his debts in bankruptcy, for a similar release, but he declined to give it. Newman subsequently obtained his dis-

charge in bankruptcy. Mrs. Williams, on the 5th day of November, 1879, filed this bill to foreclose her mortgage, and on a hearing, on the 27th day of May, 1881, she recovered a decree of foreclosure. The master sold the land, and it was bid off by her at $12,525, which left $3559.46 unpaid on the decree. Afterwards, on the 12th of September, 1883, the court found that appellant had assumed to pay the debt secured by the trust deed, and thereby became personally liable for the deficiency, and decreed that an execution issue for the unpaid balance of the decree. He appealed to the Appellate Court for the First District, where, on a hearing, the decree of the lower court was affirmed, and the case comes to this court by another appeal.

The question presented for determination is, whether the court below erred in rendering this supplemental decree awarding execution against appellant.

It is first claimed that the evidence is not sufficient to establish the fact that appellant ever consented to or became bound by the clause in the deed from Newman & Sissons to him, and in support of the proposition the case of *Thompson v. Dearborn*, 107 Ill. 88, is invoked. In that case, which was a decree on an order *pro confesso*, the bill failed to allege that Thompson ever assented to or had any knowledge that Funk, the mortgagor, had made such a deed. In the absence of all proof showing that Thompson assented to the execution of the deed, or had ever ratified it in terms, or tacitly by receiving it, or in some other manner, it was held that the bill failed to show a liability,—that to fix the liability of such a grantee it must appear that he participated in its execution, or had knowledge that it had been made and assented to, or in some manner approved or ratified it; otherwise it would be in the power of the mortgagor, of his own motion, without the knowledge and without the assent of the grantee, to render any one liable to pay the mortgage debt by simply executing to him a deed containing such a clause, and having it recorded

in the proper office. No such question arises in this case, as appellant admits that he participated in the execution of the deed and received it from the grantors.

Appellant refers to decisions in other States to show that unless the mortgagee actually agrees to look to the grantee of the mortgagor as his debtor, he does not become liable. It appears that adjudged cases of the courts are not harmonious,—not even the courts in the same States,—and it may be added that the cases are not capable of being reconciled. There could, therefore, be no reason for the endeavor on our part to attempt to conform our decisions to those of other States, as there would still be a want of harmony, and when other decisions shall be made, would induce the effort for further change in our decisions. On the mere authority of adjudged cases in other tribunals, we would have to vacillate to keep in line. We can see no necessity or reason for overruling our previous decisions, which are harmonious, and date almost from the organization of the court. In the recent case of *Dean* v. *Walker*, 107 Ill. 540, these questions were pressed upon our attention, and most of the authorities now referred to by appellant, with others, were carefully and deliberately considered, and we held adversely to the views of appellant now pressed on our attention, and the decision of that case must conclude their discussion in this case. The doctrines of that case are in accordance with the uniform decisions of this court, and we regard them as settled in this jurisdiction. We therefore decline to enter upon their further discussion in this case. The elaborate argument of appellant has failed to convince us that our former decisions are not sound. It therefore would answer no beneficial purpose to review our decisions, and repeat arguments heretofore adduced in their support.

It is next urged, that admitting the doctrine to be correct, appellant was absolved from all liability by Sissons' release, and cases are cited to the effect that the mortgagor may

release his grantee from his promise to pay the debt of the mortgagee at any time before such mortgagee brings suit to enforce the promise. The cases referred to proceed upon the grounds that the promise of the grantee is made to his grantor, and not to the mortgagee, and that the latter has no interest in the promise until he assents to and relies upon the promise, and such acceptance is manifested by bringing suit to enforce the promise; or they proceed, in other cases, upon the theory that by relying on or accepting the promise of the grantee to the mortgagor, the mortgagee releases the mortgagor, and accepts his grantee as his debtor; and there is still another theory, and that is, that the promise by the grantee is in the nature of an indemnity to the mortgagor,— and under either of these theories the mortgagor may surrender or release the indemnity, or release the grantee from his promise, before it is accepted, or before the mortgagor is released from the debt by the mortgagee. This court has never recognized either of these theories as the law. It has ever been held by this court that such a promise inures to the benefit of the person for whose benefit it is made, and the right to sue is vested in him by force of the agreement itself. It has never been held by this court that the express assent of the beneficiary is essential to his right to avail of its benefits; nor has it been held, to have force as an agreement to the person in whose favor it was made he must discharge his debtor, and accept the maker of the new promise as his debtor. On the contrary, it was held in *Dean* v. *Walker, supra,* that the mortgagee might sue either the mortgagor or his grantee assuming to pay the debt. Nor has it been held that the promise of the grantee to the mortgagor is a mere indemnity of the latter against the payment of the mortgage. On the contrary, this court has uniformly held that the beneficiary may sue at law, which repudiates the doctrine of indemnity, as the person for whose benefit the promise is made can never reach an indemnity or security given to his debtor

but in chancery, and then only when his debtor is insolvent, or on some other equitable grounds. The principle upon which this court has acted is, that such a promise invests the person for whose use it is made with an immediate interest and right, as though the promise had been made to him. This being true, the person who procures the promise has no legal right to release or discharge the person who made the promise, from his liability to the beneficiary. Having the right, it is under the sole control of the person for whose benefit it is made,—as much so as if made directly to him.

It is urged there was not a sufficient consideration to support the promise of appellant to pay the debt owing to Mrs. Williams. That is a misconception. He received the equity of redemption of the land, which he supposed was worth all that he promised to pay, and that was sufficient to support the promise. Nor does it matter whether it was received from his grantors or Mrs. Williams. Whether from the one or the other, it was equally binding. There is no force in this objection.

Perceiving no error in the record, the decree of the Appellate Court is affirmed.

*Decree affirmed.*

Mr. CHIEF JUSTICE SCHOLFIELD, dissenting:

I can not concur in this opinion. The precise question has never been presented to this court before. The release of Sissons was executed before any acceptance by Mrs. Williams of the assumption by Bay of the payment of the debt of Newman & Sissons. She might have accepted their assumption; but it was optional to do so, or not. She was under no obligation to do so. Notwithstanding the sale of the land to Bay, she had, apart from his assumption, all the security she had ever had for the payment of her debt,—namely, the individual note of Newman & Sissons, secured by trust deed on the land, in the purchase of which the indebtedness was in-

curred. Bay owed Mrs. Williams no duty in regard to this liability, further than he might voluntarily assume to protect his purchase, and Newman & Sissons were under no obligation to furnish her any additional security. It was purely voluntary, therefore, upon the part of Newman & Sissons, and Bay, whether Bay, in purchasing the land, should assume the payment of the debt of Newman & Sissons to Mrs. Williams, and purely voluntary upon her part whether she should accept it or not; and so it is impossible that she could have had a vested interest in the assumption before she, had done some act upon the faith of it, making herself thereby irrevocably a party to it. Having no vested interest in the assumption, it must necessarily follow that the release put an end to it, so that she could not afterwards elect to accept it. The assumption clause having been executed voluntarily, and without any legal claim on her part to have it executed, it was in the nature of a mere offer, until acted upon, which might be withdrawn at pleasure,—and the execution of the release was, in effect, its withdrawal. The authorities, so far as I have examined, all accord in this view. *Durham* v. *Bischof et al.* 47 Ind. 211; *Davis* v. *Calloway*, 30 id. 112; *Carnahan* v. *Toucey*, 93 id. 564; *Moore* v. *Ryder*, 65 N. Y. 442; *Stephens* v. *Cassbacker*, 8 Hun, 116; *Crowell* v. *Currier*, 27 N. J. Eq. 152; *Butterfield* v. *Hadstrom*, 7 N. H. 345.

Mr. JUSTICE DICKEY: I concur in the views here expressed by the Chief Justice. If A, owing B a given sum, for a valuable consideration takes a written promise made by C to A, (and to which promise B is not a party,) that C will pay to B the amount due to B by A, this is simply a contract between A and C, in which B, strictly speaking, has no rights. By the ancient rules, B could not avail himself of this promise, except by a suit in the name of A, against C. Afterwards the form of proceeding was so modified that B was, and now is, permitted to sue in his own name, instead of in the name

of A, for his use. When A thus exacts a promise from C to pay A's debt to C, it affects B only in so far as the same may be regarded as an offer by A to B to give B additional security. Until something occurs which may be construed as an executed gift, A may withdraw the offer.

Mr. JUSTICE SHELDON concurs in the opinion of the Chief Justice.