THE BOARD OF EDUCATION OF COMMUNITY SCHOOL DISTRICT NO. 220, Plaintiff-Appellee, *v.* THE VILLAGE OF HOFFMAN ESTATES, Defendant-Appellant.

First District (5th Division)   No. 83—2514

Opinion filed August 3, 1984.

Richard N. Williams, of Hoffman Estates, for appellant.

Margarite Primozich Loew, of Brydges, Riseborough, Morris, Franke & Miller, of Chicago, for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

Defendant village of Hoffman Estates (village) appeals from the granting of summary judgment for plaintiff Board of Education of Community School District No. 220 (District) in an action seeking a declaration of District 220's rights as a beneficiary under the terms of certain annexation agreements. The sole question before us is whether District 220 acquired any rights under the agreements which could not be altered by subsequent amendment mutually agreed to by the contracting parties.

The facts of the case are largely undisputed. In 1975, two groups of developers (Owners), desiring to have certain tracts of land annexed to the village, entered into annexation agreements with the village. Each agreement provided in relevant part that the Owners would pay to the village "the sum of $135 per residential unit as developed." The funds paid were to be held in escrow "for the benefit of education," and the agreements further provided that during the five-year period following execution of the agreements, the parties thereto would use their best efforts to cause the area annexed to be included within the boundaries of School District 15. If, at any time during the prescribed period, their efforts were successful, the funds were to be paid to School District 15. If, however, their efforts were unsuccessful, then at the end of the five-year period the escrowed funds were to be paid to District 220.

The Owners and the village were not successful in their attempts to have the area in question included within the boundaries of District 15, and shortly before the expiration of the five-year period, they amended their agreements, extending the period to nine years and providing that they would use their best efforts to cause the area to be included within the boundaries of "School Districts 15 or 54." Again, if their efforts were unsuccessful, then at the end of the nine-year period the funds were to be paid to District 220. At all pertinent times, the land which is the subject of the annexation agreements has been within the boundaries of District 220, and it has provided free education for the children residing in that area, as it is required to do under the Illinois School Code. (Ill. Rev. Stat. 1981, ch. 122, par. 10—20.12.) The funds required by the agreements have been paid and are currently being held in escrow.

After the five-year period prescribed by the original annexation agreements expired, District 220 brought the instant action seeking a declaration that it was presently entitled to receive the escrowed funds on the ground that it was a donee beneficiary of the contracts between the Owners and the village, and that the contracting parties

had no power to alter the terms of their agreements without its consent. The trial court granted summary judgment for District 220, ruling that, as a matter of law, execution of the agreements created a vested right, subject to divestment, in District 220, and that the purported amendments were therefore ineffective. Since the five-year period had elapsed, and the "divesting condition subsequent," *i.e.*, inclusion of the land within the boundaries of School District 15, had not occurred, the trial court ordered that the escrowed funds be paid to District 220. This appeal followed.

OPINION

The issue presents us with the question of when the rights of a third-party beneficiary under a contract become "vested"; that is, at what point is the third-party's right to demand performance irrevocable and unamendable. The parties herein are in agreement that District 220's status is that of a donee beneficiary, since the promise made for its benefit was a gift rather than a means of repaying some debt owed it by the village. This point being conceded, the sole issue is whether the Owners and the village retained any right to amend that portion of their agreements which conferred a benefit upon District 220.

■ It is established that third-party beneficiaries have enforceable rights under contracts made for their benefit. (See, *e.g., Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498 (creditor beneficiary); *Riepe v. Schmidt* (1916), 199 Ill. App. 129 (donee beneficiary).) However, we are aware of only one case directly concerned with the question of subsequent revocation or amendment. In *Bay v. Williams* (1884), 112 Ill. 91, 1 N.E. 340, Bay purchased land from Newman and Sissons, promising as partial consideration therefore to pay certain notes owed by them to Williams. Subsequently, Sissons agreed to release Bay from that promise. When Williams sought to recover from Bay, he asserted the release as a defense, and the supreme court, in a divided opinion, held that the promise to pay "invests the person for whose use it is made with an immediate interest and right, as though the promise had been made to him. This being true, the person who procures the promise has no legal right to release or discharge the person who made the promise, from his liability to the beneficiary." (112 Ill. 91, 97, 1 N.E. 340, 342-43.) Subsequent cases, relying on *Bay*, have stated that the rights of a creditor beneficiary become vested immediately upon execution of the contract (see, *e.g., Town & Country Bank v. James M. Canfield Contracting Co.* (1977), 55 Ill. App. 3d 91, 370 N.E.2d 630; *Pliley v. Phifer* (1954), 1

Ill. App. 2d 398, 117 N.E.2d 678), although none of those cases involved an attempted rescission or modification of an original agreement. It appears that the same rule is applied to contracts made for the benefit of a donee beneficiary (see, *e.g., Joslyn v. Joslyn* (1944), 386 Ill. 387, 54 N.E.2d 475), but it seems to be based more on an analogy to the law of trusts or gifts than to the law of contracts. We are aware that this rule is contrary to that expressed in the Restatement (Second) of Contracts, which states that, in the absence of language in the contract making the rights of a third-party beneficiary irrevocable, "the promisor and promisee retain power to discharge or modify the duty by subsequent agreement" until such time as the beneficiary, without notice of the discharge or modification, "materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or the promisee." (Restatement (Second) of Contracts sec. 311 (1981).) Furthermore, it appears that the majority of jurisdictions have now adopted the rule as set forth in the Restatement (see 17 Am. Jur. 2d *Contracts* sec. 317 (1964); 17A C.J.S. *Contracts* sec. 373 (1963), and cases cited therein), perhaps on the theory that the parties to a contract should remain free to amend or rescind their agreement so long as there is no detriment to a third party who has provided no consideration for the benefit received.

In the instant case, the village does not contend that we should alter the rule established 100 years ago in *Bay v. Williams* (1884), 112 Ill. 91, 1 N.E. 340, a rule which apparently has not been considered in the light of modern trends in the law of contracts, and we therefore need not express our views thereon. Instead, the village asserts that the above rule is inapplicable where, as here, there are two possible beneficiaries of the promise, and the ultimate beneficiary could not be determined until certain specified events occurred. Under those circumstances, it maintains, no rights could have vested in District 220, since it was not assured of being a beneficiary of the promise, and the parties should therefore be free to alter their agreement. It is District 220's position that the right became vested as soon as the Owners and the village executed the agreements, although the right was subject to divestment. Therefore, it posits, no amendment was possible. Unfortunately, although both sides cite several cases which purportedly support their arguments, none of the cases involve a situation even remotely analogous to the facts before us. All of the cases cited involved a single, identifiable beneficiary, whereas here, there are quite obviously two possible beneficiaries.

■ In considering this issue, we begin with the premise, accepted

by most commentators, that a third-party beneficiary contract may exist even if the beneficiary is not named, not identifiable, or not yet in existence, so long as the beneficiary is identifiable or in existence when the time for performance arrives. These same commentators note, however, that such beneficiaries have no vested rights until they are identified, and that contracts made for their benefit may therefore be rescinded or modified by the parties thereto until such time as the beneficiaries are identified. (See, *e.g.*, J. Calamari & J. Perillo, Contracts sec. 17—9 (2d ed. 1977); 4 Corbin, Contracts sec. 781 (1951); L. Simpson, Contracts sec. 122 (2d ed. 1965). See also 17A C.J.S. *Contracts* sec. 373 (1963).) We have indicated that such agreements are valid in Illinois, as where a contract provides that final payment will be withheld until a general contractor provides proof that all materialmen and subcontracts have been paid. (See *Town & Country Bank v. James M. Canfield Contracting Co.* (1977), 55 Ill. App. 3d 91, 370 N.E.2d 630.) Clearly, under such contracts, the third-party beneficiaries are not identifiable until they provide materials or service, and it could never be seriously contended that they had any vested rights prior to that time which would preclude the contracting parties from modifying the agreement.

Our courts have never considered the question of modification or rescission under similar facts, although the few cases from other jurisdictions which have addressed the issue indicate that until the third-party beneficiary is identified, no vested rights arise. In *Stanfield v. W. C. McBride, Inc.* (1939), 149 Kan. 567, 88 P.2d 1002, Stanfield was awarded judgment for injuries he suffered when struck by an automobile owned by Miller-Morgan Motor Co. (Miller-Morgan) and driven with its consent by an employee of W. C. McBride, Inc. (McBride). McBride paid the judgment, then sought to recover from Miller-Morgan's insurer, claiming that its employee was covered under the omnibus clause of Miller-Morgan's automobile policy. The evidence disclosed that the omnibus clause had been stricken from the policy eight days before the accident occurred, and the court ruled that while McBride's employee was a potential third-party beneficiary under the contract of insurance, he had no vested rights thereunder until such time as he became identified as an actual beneficiary, and the parties to the contract were free to modify or rescind their agreement prior to that time. Accord, *Winchester v. Sipp* (1960), 252 Iowa 156, 106 N.W.2d 55.

Similar reasoning is evident in *Associated Teachers of Huntington, Inc. v. Board of Education* (1973), 33 N.Y.2d 229, 351 N.Y.S.2d 670, 306 N.E.2d 791. There, a contract between the association and the

school board provided that sabbatical leaves would be granted to as many as 3% of the staff per school term. Twenty-one teachers submitted applications, and it was understood that not all could be granted leave. Prior to considering the applications, the school board stated that, due to financial considerations, no leaves would be granted, and the association brought an action to enforce the agreement. The court noted that the individual teachers had no vested rights, since none was assured of being granted leave and the third-party beneficiaries under the contract had not yet been identified. However, the court went on to hold that the association, as promisee, had a right to enforce the contract.

■■ While the cases cited are not directly on point, we believe that they are analogous. Here, although two entities are named in the contract, it could not be ascertained until certain events occurred which would be the third-party beneficiary. Thus, while it is true that the field of potential beneficiaries is much smaller than in the above-cited cases, ultimately—by the terms of the contract—there could be only one beneficiary of the funds held in escrow "for the benefit of education," and that beneficiary could not be identified until the time for performance arose; *i.e.*, until the land was included within the boundaries of School District 15 or five years elapsed, whichever event occurred first. It does not appear to us that District 220 was any more certain to be the beneficiary than was District 15 or that it had any greater claim to the funds than did District 15. District 220 points out that during that five-year period, it was providing education for the children residing in the area, and apparently asserts that we may conclude from that fact that the phrase "for the benefit of education" meant "for the benefit of District 220." We disagree. District 220, in providing education for the children, was doing what it is required to do under the School Code, a duty which it might have had for only a short time should the school boundaries have changed. It appears to us from the language of the contract that the parties thereto intended to confer a benefit on whichever school district would be serving the area over the long term, and they apparently hoped that that district would be District 15 rather than District 220.

■■ Based on the clear language of the contract, it is our view that District 220 was merely a potential beneficiary of the promise to pay certain specified sums for the benefit of education, and the undisputed facts establish that the actual beneficiary of the promise had not yet been identified at the time the village and the Owners modified their agreement. Since neither school district was identified as the beneficiary, neither had a vested right under the contract, and we

hold that under those circumstances the parties were free to modify their agreement.

For the foregoing reasons, the order of the trial court is reversed, and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

LORENZ and PINCHAM, JJ., concur.