(No. 82200.—

KAREN OLSON *et al.*, Appellees, v. DEAN ETHER-IDGE *et al.* (August Engelhaupt, Appellant; Citizens First National Bank of Princeton, Appellee).

*Opinion filed September 25, 1997.*

398

Law Office of Helmig & Helmig, of Peru (Charles W. Helmig III, of counsel), for appellant.

James R. May and Mary Lynn Angel May, of May & May Law Office, of Princeton, for appellees Karen Olson *et al.*

Stephen A. Kouri and S. Linn Perkins, of Vonachen, Lawless, Trager & Slevin, of Peoria, for appellee Citizens First National Bank of Princeton.

JUSTICE BILANDIC delivered the opinion of the court:

*Bay v. Williams*, 112 Ill. 91 (1884), established the rule in Illinois that the rights of a third-party beneficiary in a contract are subject to immediate vesting and, once vested, cannot be altered or extinguished through a later agreement of the contracting parties without the assent of the beneficiary. *Bay*, 112 Ill. at 96-97. We are here called upon to determine the continued validity of the *Bay* rule.

The four plaintiffs in this case are third-party beneficiaries of a promise contained in a contract entered into by the appellant and another party. The circuit court of Bureau County awarded summary judgment to

the plaintiffs based on *Bay*. The appellate court affirmed. We now reverse this award of summary judgment and remand for further proceedings, for the reasons set forth below.

## FACTS

The facts are not in dispute. The four plaintiffs, Karen Olson, Nancy Stites, Cheryl Stevenson, and Carolin Polson, were the owners of Heitzler, Inc., a John Deere dealership in Walnut, Illinois. In 1979 they sold all the stock in Heitzler, Inc., to a group of three buyers, including Dean Etheridge, for $350,000 pursuant to the terms of a stock purchase agreement and a corresponding promissory note, hereinafter referred to as Agreement I and Note I. Agreement I and Note I obligated the buyers to make annual payments to the plaintiffs on December 1 of each year, along with 9% interest, and provided remedies to the plaintiffs in the event of a default. The buyers' payments were to be made directly to the plaintiffs' checking account at a bank in Walnut (the Walnut Bank). The buyers also pledged the shares of stock as security for the unpaid balance of the purchase price, with the shares to be held in an escrow account at the Walnut Bank until the debt was satisfied. The three buyers changed the corporate name of Heitzler, Inc., to Woodley Implement, Inc., and continued operation of the business.

Nearly four years later, in August of 1983, Dean Etheridge and the appellant, August Engelhaupt, executed a written agreement wherein Etheridge sold one-half of his stock in the corporation to Engelhaupt, hereinafter referred to as Agreement II. In Agreement II, Engelhaupt agreed "to assume" one-half of Etheridge's liability and obligation under Agreement I, which included the obligation to satisfy Note I. In exchange, Etheridge assigned one-half of his rights in Agreement I over to Engelhaupt. This assignment of rights was made

subject to the terms of Agreement I. The entirety of Agreement I was incorporated by reference into Agreement II.

Agreement II obligated Engelhaupt to make annual payments on December 1 of each year, along with 9% interest, directly to the Walnut Bank. These payments were to be credited toward Etheridge's balance due to the plaintiffs under Agreement I and Note I. Specifically, under the terms of Agreement II, Engelhaupt agreed to pay a total purchase price of $88,900 for the corporate shares, as follows: $9,000 down, with the balance to be paid in the December 1 installments. A corresponding promissory note, hereinafter called Note II, was executed along with Agreement II for the remaining purchase price of $79,900. Note II reiterated the same payment schedule contained in Agreement II. Note II also stated that Engelhaupt's payments were to be made to the Walnut Bank "or at such other place as, from time to time, may be designated in writing."

From 1983 through 1985, Engelhaupt apparently made the payments due under Agreement II and Note II to the Walnut Bank, although the record is silent on this matter. On February 10, 1986, Etheridge directed Engelhaupt to pay the amount then due on Note II to another creditor of Etheridge, the Citizens First National Bank of Princeton (Princeton Bank). Sometime prior, Etheridge had assigned all his interest in Agreement II and Note II over to Princeton Bank as collateral security for another debt of Etheridge's.

Also on February 10, 1986, Engelhaupt and Princeton Bank entered into a written agreement entitled "Agreement Providing for Payment of Note," hereinafter referred to as Agreement III. Engelhaupt, in Agreement III, agreed "to satisfy the remaining indebtedness due on" Note II, by paying $83,385 to Princeton Bank. Princeton Bank agreed that this payment of $83,385

constituted full payment of Note II. Engelhaupt also paid Princeton Bank an extra $100 and, in exchange, Princeton Bank assigned to Engelhaupt all its interest in Agreement II. Etheridge concurrently executed a document ratifying Agreement III and transferring any remaining interest that he had in Agreement II over to Engelhaupt. No one disputes the fact that Engelhaupt paid Princeton Bank $83,485 on February 10, 1986.

In March of 1986 the plaintiffs filed a complaint against the original purchasers of the corporation, including Etheridge, and against Engelhaupt. The counts against the original purchasers charged that they had defaulted on Agreement I and Note I. Count V was directed against Engelhaupt. In count V, the plaintiffs asserted that they were intended third-party beneficiaries of Agreement II, the contract entered into between Etheridge and Engelhaupt. The plaintiffs claimed that, as third-party beneficiaries of Agreement II, they were entitled to enforce it. They requested the circuit court to enter a judgment against Engelhaupt for the sum of $76,500 plus interest and attorney fees. The plaintiffs asserted that $76,500 was the principal sum which remained owing under Agreement II.

Engelhaupt filed an answer to the plaintiffs' complaint and raised an affirmative defense. Engelhaupt first argued that the plaintiffs were not intended third-party beneficiaries of Agreement II. Alternatively, Engelhaupt argued that, even if the plaintiffs were intended third-party beneficiaries, any rights that they had under Agreement II were terminated before they brought suit. Specifically, Engelhaupt claimed that all his obligations under Agreement II and Note II were discharged by the actions taken between him, Etheridge, and Princeton Bank on February 10, 1986.

Ultimately, the circuit court granted the plaintiffs' motion for summary judgment against Engelhaupt on

count V in the amount of $159,375.08 (representing principal and accrued interest) plus $22,000 in attorney fees.

Engelhaupt appealed, and the appellate court affirmed. No. 3—95—0903 (unpublished order under Supreme Court Rule 23). The appellate court held that, as a matter of law, Agreement II conferred intended third-party beneficiary status on the plaintiffs. The appellate court reached this conclusion because Agreement II (1) incorporates by reference Agreement I; (2) states that Engelhaupt assumed one-half of Etheridge's liability and obligation under Agreement I; (3) contains a payment schedule identical to that in Agreement I; and (4) required Engelhaupt to make his payments directly to the plaintiffs' account. The appellate court further reasoned that the fact that Note II allowed for altering the place of payment was irrelevant because the terms of Agreement II precisely set forth the rights and obligations of the parties.

The appellate court next rejected Engelhaupt's claim that his obligations to the plaintiffs as third-party beneficiaries under Agreement II and Note II were discharged by the actions taken between him, Etheridge, and Princeton Bank on February 10, 1986. The appellate court determined that *Bay v. Williams*, 112 Ill. 91 (1884), was dispositive of this issue. *Bay* established the rule in Illinois that third-party beneficiary rights are subject to immediate vesting and, once vested, cannot subsequently be altered or extinguished through a later agreement of the original parties to the contract. *Bay*, 112 Ill. at 96-97. Applying the *Bay* rule, the appellate court concluded that the plaintiffs' third-party beneficiary rights in Agreement II vested immediately upon Etheridge's and Engelhaupt's execution of that agreement. Once this vesting occurred, Etheridge and Engelhaupt were powerless to modify the terms of Agree-

ment II in a manner detrimental to the plaintiffs without their consent. The appellate court therefore affirmed the circuit court's grant of summary judgment in favor of the plaintiffs and against Engelhaupt.

One appellate court justice specially concurred in the judgment. He acknowledged that *Bay* is controlling precedent, but stated his belief that the *Bay* rule is antiquated and should be replaced by the modern approach as articulated in the Restatement (Second) of Contracts.

We allowed Engelhaupt's petition for leave to appeal (155 Ill. 2d R. 315(a)) to determine whether *Bay* remains good law.

## ANALYSIS

As a preliminary matter, we note that Engelhaupt does not challenge the appellate court's initial holding that the plaintiffs are intended third-party beneficiaries of Agreement II. We therefore accept that holding as correct for purposes of this appeal because the waiver doctrine applies. See 155 Ill. 2d R. 341(e)(7).

Engelhaupt's appeal focuses on the appellate court's rejection of his claim that he is not subject to liability to the plaintiffs because all his obligations under Agreement II and Note II were discharged by the actions taken between him, Etheridge, and Princeton Bank on February 10, 1986. The actions pointed to by Engelhaupt are his $83,385 payment to Princeton Bank on Note II, and Princeton Bank's agreement that this constituted full payment; and his $100 payment to Princeton Bank for Agreement II, and Princeton Bank's and Etheridge's assignments of all their interests in Agreement II over to Engelhaupt. Engelhaupt concedes that the vesting rule in *Bay* commands a contrary conclusion, but argues that the *Bay* rule should be replaced with the vesting rule set forth in section 311 of the Restatement (Second) of Contracts (1981). According to Engelhaupt, if section

311 is applied, the summary judgment entered in favor of the plaintiffs was improper because questions of material fact remain to be determined.

An award of summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Although summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic measure and should be granted only when the movant's right to judgment is free from doubt. *Reed v. Bascon*, 124 Ill. 2d 386, 393 (1988). A reviewing court conducts *de novo* review in an appeal from a summary judgment ruling. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

Before addressing the parties' arguments, we briefly summarize third-party beneficiary law. The well-established rule in Illinois is that if a contract is entered into for the direct benefit of a third person, the third person may sue for a breach of the contract in his or her own name, even though the third person is a stranger to the contract and the consideration. *Joslyn v. Joslyn*, 386 Ill. 387, 400 (1944); *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257 (1931). This principle of law is widely accepted throughout the United States, because allowing a third-party beneficiary to sue the promisor directly is said to be manifestly just and practical. See 17A Am. Jur. 2d *Contracts* §§ 435, 437 (2d ed. 1991). In cases such as this one, it increases judicial efficiency by removing the privity requirement, under which the beneficiary must sue the promisee, who then in turn must sue the promisor.

An important corollary to this principle is that the promisor may assert against the beneficiary any defense that the promisor could assert against the promisee if the promisee were suing on the contract. See J. Ca-

lamari & J. Perillo, Contracts § 17—10, at 711 (3d ed. 1987). This is because the third-party beneficiary's rights stem from a contract to which the beneficiary is not a party. Accordingly, the promisor in this case, Engelhaupt, may assert against the plaintiffs-beneficiaries any defense that he could assert against the promisee, Etheridge, if Etheridge were suing him on Agreement II. Engelhaupt here asserts the defense that all his obligations under Agreement II and Note II were discharged when he made full payment to Princeton Bank on Note II and obtained assignments of both Princeton Bank's and Etheridge's interests in Agreement II.

The plaintiffs maintain, however, that Engelhaupt is not entitled to assert this defense against them because their rights as third-party beneficiaries had "vested." The vesting doctrine is an exception to the above rule that the promisor may assert against the beneficiary any defense that the promisor could assert against the promisee. See J. Calamari & J. Perillo, Contracts § 17—11, at 715 (3d ed. 1987); J. Calamari & J. Perillo, Contracts § 17—8, at 624 (2d ed. 1977). Under this doctrine, once a third-party beneficiary's rights vest, the original contracting parties cannot modify or discharge those rights without the beneficiary's assent. The "question of vesting arises only where the promisor and the promisee purport to vary or discharge the rights of the beneficiary"; otherwise, "the topic of vesting is irrelevant." J. Calamari & J. Perillo, Contracts § 17—11, at 715 (3d ed. 1987). Before proceeding, then, we must determine in this case what rights the plaintiffs are asserting under Agreement II, and whether Engelhaupt and Etheridge attempted to vary or discharge those rights.

The plaintiffs here are asserting third-party beneficiary rights in Agreement II. In particular, they claim that they are the beneficiaries of Engelhaupt's promise

in Agreement II "to assume" one-half of Etheridge's obligation to pay the plaintiffs under Agreement I and Note I. This assumption by Engelhaupt of one-half of Etheridge's obligation to pay is a classic example of a delegation. Unlike an assignment, which involves only a transfer of rights, a delegation involves the appointment of another to perform one's duties. See *In re Marriage of LaShelle*, 213 Ill. App. 3d 730, 735 (1991) ("Rights are assigned; duties are delegated"); J. Calamari & J. Perillo, Contracts § 18—1, at 722 (3d ed. 1987). When a duty is delegated, the delegating party continues to remain liable for performance. See J. Calamari & J. Perillo, Contracts § 18—25, at 757 (3d ed. 1987). The effects of this delegation are as follows: Etheridge remains liable to the plaintiffs under Agreement I and Note I, while Engelhaupt is liable to the plaintiffs under the third-party beneficiary theory. The plaintiffs therefore have a claim against both Etheridge and Engelhaupt, but are entitled to only one satisfaction. See J. Calamari & J. Perillo, Contracts § 18—26, at 758 (3d ed. 1987). Thus, in count V, the plaintiffs are asserting their rights as third-party beneficiaries to payment from Engelhaupt, as provided for in Agreement II.

The next inquiry is whether Engelhaupt and Etheridge attempted to modify or discharge the plaintiffs' rights to payment as provided for in Agreement II. The undisputed facts show that Etheridge, after entering into Agreement II and Note II with Engelhaupt, later assigned all his interest in Agreement II and Note II over to Princeton Bank as collateral security for another debt. As Etheridge's assignee, Princeton Bank stood in Etheridge's shoes, thereby obtaining no better rights than those Etheridge had. See *Wetherell v. Thirty-First Street Building & Loan Ass'n*, 153 Ill. 361, 365 (1894); *U.S. Air, Inc. v. Prestige Tours, Inc.*, 159 Ill. App. 3d 150, 155 (1987) ("It is hornbook law that an assignee

stands in the shoes of the assignor and can enforce only those claims that the assignor could enforce"). Engelhaupt and Princeton Bank then entered into yet another agreement, Agreement III. Under the terms of Agreement III, Engelhaupt agreed to satisfy the remaining indebtedness due on Note II, by paying $83,385 to Princeton Bank, and Princeton Bank agreed that this payment constituted full payment of Note II. Engelhaupt also paid Princeton Bank an extra $100 and, in exchange, Princeton Bank assigned to Engelhaupt all the Bank's interest in Agreement II. We find that, through these actions, Engelhaupt and Etheridge's assignee did attempt to discharge the plaintiffs' rights to payment as beneficiaries of Agreement II and Note II. Etheridge's assignee claimed Engelhaupt's payments for itself, while purporting to modify and discharge the plaintiffs' rights to those payments. Indeed, Engelhaupt's constant assertion throughout these proceedings has been that the above actions constitute a discharge, by satisfaction, of all his obligations under Agreement II and Note II. The vesting doctrine therefore applies because Engelhaupt and Etheridge's assignee purported to discharge the plaintiffs' rights to payment under Agreement II and Note II.

We now turn to the primary issue in this case: how vesting should be defined in this context. The plaintiffs urge application of the vesting rule declared in *Bay*. Engelhaupt, on the other hand, asks us to apply the vesting rule set forth in section 311 of the Second Restatement of Contracts.

In *Bay*, 112 Ill. 91, Williams sold land to Newman and Sissons in exchange for a down payment and promissory notes payable in installments. Newman and Sissons then sold the land to Bay. The deed tendered to Bay contained an express promise by Bay to pay the balance due on the promissory notes executed by Wil-

liams and Newman and Sissons. Bay later obtained a release of his obligation to pay Williams from Sissons. Newman went bankrupt without giving Bay a release. Williams exercised her power of foreclosure and sold the land, but was left being owed $3,559 on the notes. She sued Bay for that amount as third-party beneficiary of the deed between Newman and Sissons and Bay.

Bay argued that he was absolved from his promise to pay the promissory notes by Sissons' release. He proposed three different theories: (1) that third-party beneficiary rights do not vest until suit is brought; (2) that third-party beneficiary rights do not vest until the beneficiary relies upon or accepts the promisor's promise; and (3) that the promisor's promise to pay is a mere indemnity, which cannot be reached until the promisee is insolvent or on some other equitable ground. This court in *Bay* rejected these views, holding:

> "[The promisor's] promise invests the person for whose use it is made with an immediate interest and right, as though the promise had been made to him. This being true, the person who procures the promise has no legal right to release or discharge the person who made the promise, from his liability to the beneficiary. Having the right, it is under the sole control of the person for whose benefit it is made,—as much so as if made directly to him." *Bay*, 112 Ill. at 97.

Consequently, *Bay* established the rule in Illinois that third-party beneficiary rights vest immediately and cannot be altered or extinguished through a later agreement of the original parties to the contract, unless the beneficiary assents.

Engelhaupt urges us to replace the *Bay* rule with the "modern view" as set forth in section 311 of the Second Restatement. Section 311, entitled "Variation of a Duty to a Beneficiary," stands in direct contrast to *Bay*. It provides that, in the absence of language in a contract making the rights of a third-party beneficiary irrevocable, the parties to the contract "retain power to

discharge or modify the duty by subsequent agreement," without the third-party beneficiary's assent, at any time until the third-party beneficiary, without notice of the discharge or modification, materially changes position in justifiable reliance on the promise, brings suit on the promise or manifests assent to the promise at the request of the promisor or promisee. Restatement (Second) of Contracts § 311 (1981).

Section 311 now represents the majority view on the subject of vesting. *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819 (9th Cir. 1985) (applying California law); see, *e.g., Bridgman v. Curry*, 398 N.W.2d 167 (Iowa 1986); *Detroit Bank & Trust Co. v. Chicago Flame Hardening Co.*, 541 F. Supp. 1278 (N.D. Ind. 1982) (applying Indiana law); see also 17A Am. Jur. 2d *Contracts* § 461, at 482-83 (2d ed. 1991) (and cases cited therein); 17A C.J.S. *Contracts* § 373 (1963). In contrast, the immediate vesting rule as set forth in *Bay* represents the minority view, followed by only a handful of states. See 17A Am. Jur. 2d *Contracts* § 461, at 483 (2d ed. 1991) (and cases cited therein).

Engelhaupt maintains that we should adopt section 311. He asserts that section 311 represents the majority rule on vesting because it better conforms to modern commercial practices and general principles of contract law. According to Engelhaupt, parties should remain free to modify or discharge their contracts as they see fit, without the assent of a third-party beneficiary, subject only to the three exceptions provided for in section 311. Section 311 makes sense, Engelhaupt contends, because third-party beneficiaries should not be able to enforce contracts for which they do not give any consideration, unless they demonstrate some detriment or act of faith in reliance on the contract.

Engelhaupt asserts that the superiority of the Restatement approach over the *Bay* rule is demonstrated

by the facts present in this case. As he explains, the plaintiffs here freely chose to extend credit to Etheridge, who was then bound to pay them under Agreement I and Note I. Etheridge and Engelhaupt then freely contracted with each other that Engelhaupt would make one-half of Etheridge's payments to the plaintiffs, in Agreement II and Note II. The plaintiffs, however, were not bound to accept Engelhaupt's promise to pay in Agreement II and Note II in replacement of Etheridge's promise to pay in Agreement I and Note I, and did not do so. Consequently, the plaintiffs' contractual remedies against Etheridge in the event of Etheridge's nonpayment under Agreement I remained intact. Engelhaupt asserts that, in this situation, he and Etheridge should not be forever barred from modifying or discharging their agreement without the plaintiffs' assent, which is precisely what *Bay* mandates. Rather, Engelhaupt asserts, the third-party beneficiary plaintiffs should be found to have obtained vested rights in his and Etheridge's contract only if they meet one of the circumstances set forth in section 311.

Finding Engelhaupt's arguments persuasive, we hereby adopt the vesting rule set forth in section 311 of the Second Restatement. The rationale underlying section 311's vesting rule is that "parties to a contract should remain free to amend or rescind their agreement so long as there is no detriment to a third party who has provided no consideration for the benefit received." *Board of Education of Community School District No. 220 v. Village of Hoffman Estates*, 126 Ill. App. 3d 625, 628 (1984). This rationale is compelling. Moreover, we find this rationale to be consistent with the general principles running throughout contract law. Contract law generally favors the freedom to contract. Contract law also allows for equitable remedies where the facts compel such a result.

.

In contrast, the immediate vesting rule of *Bay* curtails the freedom to contract. It provides, in essence, that every promise which benefits a third-party beneficiary carries with it another term, implied at law, that the parties to the contract are prohibited from modifying or discharging the promise that benefits the beneficiary, without the beneficiary's assent. We do not believe that the modern law of contracts should always imply such a term. To do so can work a great injustice upon the parties involved in a particular case. Although, as the plaintiffs contend, the *Bay* rule is clear and easy to apply, this does not persuade us to retain it. Our concern is that the rule of law we expound best serves the pursuit of justice, not that it is the easiest rule of law for courts to apply.

We note, moreover, that the plaintiffs' argument against adoption of the Restatement rule is not persuasive. They maintain that the Restatement position has fluctuated so much over the past century that it is not stable. We do not agree with this characterization. In fact, the Restatement position regarding creditor beneficiaries, such as the plaintiffs, is essentially the same as it has always been. Under the original Restatement, the rights of creditor beneficiaries vested once the beneficiary brought suit or otherwise materially changed position in reliance on the promise. Restatement of Contracts §§ 142, 143 (1932). Today, creditor beneficiaries are called intended beneficiaries, and their rights vest once the beneficiary brings suit on the promise, materially changes position in justifiable reliance on the promise or manifests assent to the promise at the request of the promisor or promisee. Restatement (Second) of Contracts §§ 302, 311 (1981). As to donee beneficiaries, the original Restatement provided that their rights vested immediately. Restatement of Contracts §§ 142, 143 (1932). This was changed after

substantial criticism. See J. Calamari & J. Perillo, Contracts § 17—9, at 626 (2d ed. 1979). Now donee beneficiaries are also classified as intended beneficiaries, and their rights vest in the same manner as stated above. Restatement (Second) of Contracts §§ 302, 311 (1981). Even were we to agree with the plaintiffs' characterization of the Restatement view as unstable, however, this would not impact our decision. We find the current Restatement position on vesting to be consistent with general principles underlying contract law. This court is free to reject any later revisions of the Restatement.

In conclusion, we adopt the vesting rule set forth in section 311 of the Second Restatement. *Bay* is hereby overruled. The circuit court awarded summary judgment to the plaintiffs based on the *Bay* rule. The circuit court did not consider the plaintiffs' motion for summary judgment in the context of the vesting rule of section 311. We therefore reverse this award of summary judgment for the plaintiffs and remand to the circuit court for further proceedings, consistent with section 311's vesting rule.

The plaintiffs contend, however, that reversal is not warranted because, even applying section 311, summary judgment in their favor was proper. According to the plaintiffs, they materially changed their position to their detriment in justifiable reliance on Agreement II, brought timely suit on Agreement II, and appropriately manifested their assent to Agreement II. The plaintiffs certainly are entitled to raise these arguments on remand. If, on remand, the plaintiffs establish any of these facts, then their rights have vested under section 311. These arguments, however, provide us with no basis to affirm the summary judgment awarded to the plaintiffs based on *Bay*. Engelhaupt must be given the opportunity to present facts and argument pertinent to section 311's application.

The plaintiffs also assert that it is inequitable to apply section 311 to their case. They ask us to "fashion an appropriate decree in equity *** that leaves to them, without further delay or expense, the benefits of *Bay*." They assert that it is inequitable for this court to prolong these proceedings by changing the law applicable to their case. They further assert that they have "clean hands," while Engelhaupt, Etheridge, and Princeton Bank do not.

We do not agree with the plaintiffs that it is inequitable to apply section 311's vesting rule to their case. As we explained above, section 311 is superior to the *Bay* rule precisely because it allows for consideration of the particular facts involved in a situation. We note, moreover, that it remains to be determined in this case who has clean hands and who does not. Consequently, this request is denied.

As a final matter, we note that when Engelhaupt filed his answer to the plaintiffs' complaint, he also filed a third-party complaint against Princeton Bank. Therein, Engelhaupt asserted that Princeton Bank had breached its warranty to him that it was the holder of Note II and entitled to receive payment thereof. Engelhaupt asked that the amount he paid in satisfaction of Note II be awarded to the plaintiffs. The circuit court denied all relief on Engelhaupt's third-party complaint, and the appellate court affirmed. Engelhaupt does not challenge this holding here. This holding is therefore affirmed. See 155 Ill. 2d R. 341(e)(7).

Princeton Bank had also filed a counterclaim against Engelhaupt. Ultimately, the circuit court granted summary judgment to Princeton Bank on this counterclaim. Engelhaupt does not make any argument in this appeal concerning this summary judgment. Waiver thus applies. See 155 Ill. 2d R. 341(e)(7). Consequently, this summary judgment is also affirmed.

## CONCLUSION

For the reasons stated, the appellate court's affirmance of the circuit court's award of summary judgment for the plaintiffs and against Engelhaupt based on *Bay* is reversed. The remainder of the appellate court's rulings are affirmed. The circuit court's award of summary judgment for the plaintiffs and against Engelhaupt is reversed. The circuit court's denial of relief on Engelhaupt's third-party complaint against Princeton Bank is affirmed. Lastly, the circuit court's award of summary judgment to Princeton Bank on its counterclaim against Engelhaupt is affirmed. This cause is remanded to the circuit court of Bureau County for further proceedings not inconsistent with this opinion.

*Appellate court judgment
affirmed in part and reversed in part;
circuit court judgment
affirmed in part and reversed in part;
cause remanded.*