PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
¶ 1 Juanita Duke, a resident at Belhaven Nursing Home, died on July 2, 2006. The administrator of her estate, plaintiff Darlene Crawford, brought a personal injury suit against defendant Guadalupe Economic Services Corporation (Guadalupe), which owned the nursing home at the time of Duke's death. Guadalupe did not appear, and a default judgment was entered against Guadalupe for $1.5 million.
¶ 2 At the time Crawford filed her complaint on June 30, 2008, Guadalupe no longer owned the nursing home, having defaulted on its mortgage of that property. The mortgagee initiated foreclosure proceedings in January 2006 and, as part of the proceedings, sold the property to defendant Belhaven Realty LLC (Belhaven) on July 11, 2006. As part of the purchase agreement, Belhaven agreed to assume Guadalupe's liabilities. Despite this undertaking, Belhaven sought and obtained dismissal from Crawford's lawsuit after informing Crawford that it did not own the nursing home while Duke resided there.
¶ 3 On January 18, 2013, Crawford filed a second suit, seeking to enforce the $1.5 million default judgment against Belhaven based on Belhaven's assumption of Guadalupe's liabilities. The trial court granted summary judgment to Belhaven, finding that Crawford was precluded from recovery based on Guadalupe's failure in the underlying suit to either defend itself or tender its defense to Belhaven. Crawford appeals, arguing that material issues of fact exist as to whether Guadalupe acted reasonably to mitigate its damages in the underlying suit. We find that Belhaven's assumption of Guadalupe's debts was not contingent upon Guadalupe either defending itself or tendering its defense to Belhaven and, therefore, reverse the trial court's grant of summary judgment.
¶ 4 BACKGROUND
¶ 5 Belhaven's 2006 Purchase of the Nursing Home
¶ 6 Guadalupe purchased the nursing home in 1997 subject to a mortgage that was later assigned to U.S. Bank National Association (U.S. Bank). When Guadalupe defaulted on the mortgage, U.S. Bank filed a foreclosure action on January 13, 2006.
¶ 7 On March 29, 2006, Belhaven agreed to purchase the nursing home from U.S. Bank. Guadalupe was not a party to the purchase agreement. The original agreement between U.S. Bank and Belhaven provided that Belhaven would not assume any of the nursing home's debts or liabilities, including tort liabilities. On June 30, 2006, U.S. Bank sent a letter to Belhaven stating that, notwithstanding the provisions *768 to the contrary in the March 29 agreement, Belhaven would
"assume any and all debts, obligations, claims, and other liabilities, whether known or unknown, relating to the operations of Belhaven Nursing Home, both prior to and after the Closing Date * * *; EXCEPT [Belhaven] shall not be assuming the payment of any management fees owed the Long Hill Company, any accrued payroll or benefits, or the insurance deductibles involving the following residents: Johnny Williams and Louise Pool."
Belhaven's manager, Michael Blisko, signed the June 30 addendum.
¶ 8 On July 11, 2006, the circuit court entered an order and judgment of consent foreclosure in favor of U.S. Bank and against Guadalupe. Pursuant to the judgment, Belhaven became the owner of the nursing home on July 11, 2006. The Illinois Secretary of State revoked Guadalupe's corporate status on May 11, 2007. There is no evidence in the record that Guadalupe, a Texas corporation, conducted any business in Illinois after the sale of the nursing home to Belhaven.
¶ 9 The Underlying Lawsuit
¶ 10 Duke moved to the nursing home on April 27, 2006. Between May 28 and June 4, 2006, Duke suffered a series of falls. She died on July 2, 2006, while Guadalupe still owned the nursing home. Duke's cause of death was identified as "acute pulmonary embolism, immobility with falls, and dementia with blindness."
¶ 11 On June 30, 2008, Crawford, as special administrator of Duke's estate, filed a personal injury suit alleging claims under the Nursing Home Care Act ( 210 ILCS 45/1-101 et seq. (West 2008) ) and for medical negligence. Crawford's initial complaint named Belhaven (as Belhaven was the owner of record at that time) and various other parties as defendants but not Guadalupe. She amended her complaint to add Guadalupe on January 5, 2009.
¶ 12 In January 2009, Diana Lopez was Guadalupe's executive director at the company's headquarters in Texas. On January 13, 2009, when Lopez learned that Guadalupe was named as a defendant in the underlying suit, she made a phone call to Mary Glen Richardson, a Belhaven employee who was administrator of the nursing home. According to Lopez, Richardson assured her that the lawsuit "was not Guadalupe's problem and was the responsibility of Belhaven."
¶ 13 But Belhaven did not undertake Guadalupe's defense, nor did Guadalupe appear on its own behalf. The court found Guadalupe in default on April 27, 2009. Meanwhile, Belhaven sought dismissal from the case based on the fact that it did not own the nursing home at the time of Duke's injury and death. On October 20, 2009, before the trial court ruled on Belhaven's motion, Crawford voluntarily dismissed Belhaven from the action. There is nothing in the record to indicate that Belhaven disclosed to Crawford its assumption of liabilities relating to Guadalupe's operation of the nursing home.
¶ 14 Following a prove-up on June 28, 2010, the court awarded Crawford a judgment against Guadalupe in the amount of $1.5 million plus costs.
¶ 15 On October 20, 2010, Crawford refiled her personal injury complaint against Belhaven, asserting that Belhaven was a successor-in-interest to Guadalupe. Crawford subpoenaed a copy of the June 30 addendum to the 2006 purchase agreement, obtaining it on June 11, 2012. On November 9, 2012, the trial court stayed the case to allow Crawford the opportunity to determine Belhaven's obligations.
*769 ¶ 16 The Present Lawsuit
¶ 17 On January 18, 2013, Crawford filed this lawsuit against Belhaven, alleging that, because Belhaven assumed Guadalupe's liabilities in the 2006 purchase agreement, Belhaven was required to satisfy the judgment against Guadalupe in the underlying lawsuit. Crawford sought a declaration that Belhaven was liable for the judgment against Guadalupe and a judgment against Belhaven for $1.5 million plus postjudgment interest and costs. Crawford later amended her complaint to add Guadalupe as a defendant.[1] Guadalupe did not appear or litigate any defenses.
¶ 18 In its answer, Belhaven raised multiple affirmative defenses pertinent to this appeal. Underlying these defenses was Belhaven's assertion that, since its alleged liability arose out of the 2006 purchase agreement between U.S. Bank and Belhaven, the action should be treated as a breach of contract action. Relatedly, Belhaven argued that, if Crawford was a third-party beneficiary of the contract between U.S. Bank and Belhaven (an assertion which Belhaven disputed), Crawford "steps into the shoes of Guadalupe" and was subject to any defenses that Belhaven might raise against Guadalupe in a breach of contract action by Guadalupe.
¶ 19 Based on the foregoing rationale, Belhaven argued that Guadalupe failed to mitigate its damages by defending the underlying suit and therefore Crawford-litigating in Guadalupe's shoes-was precluded from recovery. Specifically, Belhaven alleged that Guadalupe failed to (1) tender its defense to its insurer or to Belhaven, (2) appear or answer the complaint, (3) raise any defenses, including the two-year statute of limitations applicable to personal injury claims, (4) vacate the default judgment or the damages award, and (5) appeal the judgment.
¶ 20 Belhaven additionally argued that Crawford was not an intended third-party beneficiary of the 2006 agreement and therefore lacked standing to sue on the contract. Belhaven further contended that, even if Crawford had standing to sue, her suit was time-barred. According to Belhaven, the statute of limitations began to run, at the latest, on the date of Duke's death on July 2, 2006. Although a suit for breach of a written contract typically has a 10-year statute of limitations, Belhaven contended that the applicable statute was the 5-year period for oral contracts because determining whether Crawford was an intended third-party beneficiary would require consideration of evidence outside the four corners of the contract (e.g. , evidence of the judgment against Guadalupe in the underlying suit).
¶ 21 Crawford moved for summary judgment on Belhaven's affirmative defenses. The trial court granted Crawford's motion as to Belhaven's standing defense, as well as various defenses not at issue in this appeal, but denied Crawford's motion as to the statute of limitations and Guadalupe's failure to mitigate damages. With regard to the statute of limitations, the court found that "the 5 year statute of limitations applicable to oral contracts applies to the dispute between Plaintiff and Belhaven," but it made no finding as to when Crawford's cause of action accrued, and it did not address Belhaven's contention that Crawford's suit was time-barred.
¶ 22 Meanwhile, on November 16, 2015, Belhaven served requests to admit on Guadalupe pursuant to Illinois Supreme Court Rule 216 (eff. July 1, 2014)[2] , asking Guadalupe *770 to admit that in the underlying suit, Guadalupe did not make a written tender of defense to Belhaven, did not authorize Belhaven to represent it in the suit, did not appear or answer the complaint, did not contest the order of default, and did not file a postjudgment motion, appeal, or section 2-1401 motion ( 735 ILCS 5/2-1401 (West 2014) ). After Guadalupe failed to answer, Belhaven moved to deem these facts admitted. The trial court granted Belhaven's motion on May 4, 2016, over Crawford's objection.
¶ 23 Belhaven then moved for summary judgment, arguing that Crawford, standing in Guadalupe's shoes, could not identify any breach of the 2006 purchase agreement. Belhaven reasoned that since Guadalupe never formally tendered its defense to Belhaven in the underlying action (per Guadalupe's Rule 216 admissions), Belhaven did not breach the contract.
¶ 24 Belhaven further argued that, even if it did breach the purchase agreement, it was not liable for Guadalupe's damages because they were "entirely and completely avoidable." The injury in the underlying case occurred no later than Duke's death on July 2, 2006. Therefore, the limitations period for that suit expired no later than July 2, 2008. 735 ILCS 5/13-202, 13-212(a) (West 2006). But Crawford did not add Guadalupe as a defendant in the underlying suit until January 5, 2009. Thus, Belhaven argued, if Guadalupe had litigated the case and raised a statute of limitations defense, it could have avoided all liability.
¶ 25 Crawford filed a response in which she argued that she was not bound by Guadalupe's Rule 216 admissions. She further argued that there were material issues of fact as to Belhaven's affirmative defenses regarding indemnification and mitigation.
¶ 26 First, Crawford argued that Lopez's phone conversation with Richardson on January 13, 2009, constituted a tender of defense. Second, Crawford argued that even without tendering its defense, Guadalupe could reasonably have expected a defense from Belhaven, since Belhaven defended Guadalupe in other personal injury lawsuits involving nursing home residents. The record reflects that from 2007 to 2011, Guadalupe and Belhaven were codefendants in multiple lawsuits, including Brown v. Belhaven, No. 07-L-4665 (Cir. Ct. Cook County) (Brown ); Hammonds v. Guadalupe Economic Services Corp., No. 07-L-1410 (Cir. Ct. Cook County) (Hammonds ); and Howard v. The Renaissance at 87th Street, Inc., No. 07-L-9200 (Cir. Ct. Cook County) (Howard ). In Brown and Hammonds , the firm Swanson, Martin & Bell represented both Guadalupe and Belhaven. The record does not disclose whether Guadalupe tendered its defense to Belhaven in either Brown or Hammonds . In Howard , Guadalupe made a written tender of defense to Belhaven. Belhaven did not formally undertake Guadalupe's defense in that case; Swanson represented Belhaven only, and Guadalupe did not appear. But when the plaintiff in Howard settled with Belhaven on June 10, 2011, Guadalupe was released as part of the settlement agreement.
¶ 27 Finally, Crawford argued that, in the absence of a defense from Belhaven, Guadalupe could not have mitigated its damages because it lacked the resources to mount its own defense. In support, Crawford presented Lopez's affidavit, in which Lopez stated:
*771 "When I took over as Executive Director [in 2009] and during all relevant times Guadalupe Economic Services Corporation did not have funds to defend any of the matters in Illinois. The corporation was facing federal tax liens with threats of levies and all funds were being used to address those issues and other issues that had not been addressed during [the previous executive director's] tenure that threatened the continued existence of the corporation."
Lopez further stated that Guadalupe did not profit from the sale of the nursing home and that "[a]ny money that would/could have helped the Texas operation would have been the tax refunds that were transferred to Belhaven in return for full indemnity."
¶ 28 In response, Belhaven argued that (1) regardless of what Lopez might have said over the phone to Richardson, there was no evidence that Guadalupe ever made a written tender of defense to Belhaven, which it claimed was a prerequisite to recovery; (2) the other cases cited by Crawford involving Belhaven and Guadalupe were irrelevant; and (3) Guadalupe's mitigation efforts were unreasonable as a matter of law because Guadalupe made no effort to avoid the damages it incurred.
¶ 29 On November 22, 2016, the trial court granted Belhaven's motion for summary judgment. The court found that Guadalupe did not make a written tender of its defense to Belhaven in the underlying suit, because Guadalupe's admissions in this regard were binding upon Crawford and, in any event, Lopez's affidavit was not sufficient to create an issue of material fact on that point. The court additionally found that Guadalupe failed to mitigate its damages in the underlying suit. In granting summary judgment, the court did not rely on its earlier ruling on the statute of limitations.
¶ 30 Crawford voluntarily dismissed Guadalupe on March 3, 2017, pursuant to section 2-1009 of the Code of Civil Procedure ( 735 ILCS 5/2-1009 (West 2016) ), and she timely filed the instant appeal.
¶ 31 ANALYSIS
¶ 32 Crawford argues (1) the trial court erred in finding that she was bound by Guadalupe's Rule 216 admissions, (2) material issues of fact exist regarding Belhaven's liability, and (3) the trial court erred in finding that the relevant statute of limitations was 5 years rather than 10 years. Belhaven disputes these contentions and also argues, as an alternative ground for affirming, that Crawford lacks standing to bring this suit because she was not an intended third-party beneficiary of the 2006 purchase agreement.
¶ 33 We review the trial court's grant of summary judgment de novo ( Williams v. Manchester , 228 Ill. 2d 404, 417, 320 Ill.Dec. 784, 888 N.E.2d 1 (2008) ), keeping in mind that summary judgment is only appropriate where "there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). In order to prevail, the nonmoving party must present some evidence that would arguably entitle her to recover at trial. Keating v. 68th & Paxton, L.L.C. , 401 Ill. App. 3d 456, 472, 344 Ill.Dec. 293, 936 N.E.2d 1050 (2010).
¶ 34 We begin our analysis by pointing out two fundamental flaws that underlie all of Belhaven's arguments here and in the trial court. First, Belhaven posits that Crawford "stepped into the shoes of" Guadalupe for purposes of enforcing Belhaven's agreement to assume the nursing home's known and unknown liabilities. Second, Belhaven faults Guadalupe for failing to tender to it the defense of Crawford's personal injury lawsuit, and it contends *772 that failure and Guadalupe's inaction in response to that lawsuit relieve it of the obligation to satisfy Crawford's judgment. Neither of these contentions has merit.
¶ 35 Belhaven's first misdirection is to treat Crawford as if she was a party to the purchase contract between it and U.S. Bank because she "stepped into Guadalupe's shoes" under that contract. For example, in its brief on appeal, Belhaven states: "To avoid confusion in this response brief, the sale will be described as being between Belhaven and Guadalupe." Belhaven then reasons that Crawford, who stepped into Guadalupe's shoes, was subject to all defenses that Belhaven could have asserted against Guadalupe. But Guadalupe was not, in fact, a party to the sale agreement, and Belhaven did not purchase anything from Guadalupe under that agreement. Before initiating foreclosure proceedings, U.S. Bank was appointed trustee by a Minnesota court. As trustee, U.S. Bank took possession of the nursing home property as well as its books and records. As the agreement recites, Belhaven purchased U.S. Bank's indebtedness under its mortgage with Guadalupe and obtained the right to pursue the pending foreclosure proceedings in U.S. Bank's stead in the event Guadalupe did not consent to the entry of a judgment of foreclosure as it had informed U.S. Bank it would. Thus, it is a sleight of hand to argue that Guadalupe was somehow a party to the sale agreement so that any contractual defenses Belhaven could have asserted against Guadalupe may now be asserted against Crawford.
¶ 36 The second flaw that permeates Belhaven's arguments is its repeated emphasis on Guadalupe's failure to tender to Belhaven the defense of Crawford's personal injury suit. Yet Belhaven never identifies the source of Guadalupe's supposed obligation. There is certainly nothing in the purchase and sale agreement between Belhaven and U.S. Bank that conditions Belhaven's assumption of the preclosing liabilities related to the operation of the nursing home on Guadalupe's tender of the defense of a lawsuit. As part of the purchase of U.S. Bank's interest in the property, Belhaven was provided with the books and records of the nursing home from the facility's manager, and among those records was at least one insurance policy. Belhaven also inherited the facility's employees (although it was afforded the right after closing to decide whether to retain or terminate those employees). Having all this information at its disposal and having agreed to assume known or unknown preclosing liabilities relating to the nursing home's operations, we fail to see how Guadalupe's tender of defense was necessary to (1) trigger Belhaven's voluntary assumption of liabilities or (2) alert Belhaven of the need to defend Crawford's lawsuit (to which Belhaven was already a party), given that Belhaven had agreed to assume liability for any judgment entered in the case.
¶ 37 Tender is a concept drawn from insurance cases. An insurer's duty to defend an insured is triggered (1) when the insured tenders the defense of an action that is potentially within the scope of coverage ( Certain Underwriters at Lloyd's, London v. Central Mutual Insurance Co. , 2014 IL App (1st) 133145, ¶ 20, 382 Ill.Dec. 483, 12 N.E.3d 762 ) or (2) when the insurer has " 'actual notice' " of such a claim, even without a formal tender ( Sinclair Oil Corp. v. Allianz Underwriters Insurance Co. , 2015 IL App (5th) 140069, ¶ 51, 396 Ill.Dec. 21, 39 N.E.3d 570 (citing Cincinnati Cos. v. West American Insurance Co. , 183 Ill. 2d 317, 328, 233 Ill.Dec. 649, 701 N.E.2d 499 (1998) ) ). Tendering a defense, in this context, means asking the insurer for assistance in defending *773 the suit. Cincinnati Cos. , 183 Ill. 2d at 321, 233 Ill.Dec. 649, 701 N.E.2d 499. Belhaven is not an insurer, and Guadalupe is not seeking defense and indemnity under the terms of an insurance policy. So Belhaven's tender argument is irrelevant.
¶ 38 But even if we considered Belhaven to be analogous to an insurer, a formal tender of defense would still not be required under the circumstances here because it is undisputed that Belhaven had actual notice of Crawford's claim against Guadalupe. See West American Insurance Co. v. Yorkville National Bank , 238 Ill. 2d 177, 190, 345 Ill.Dec. 445, 939 N.E.2d 288 (2010) (an insurer has " 'actual notice' " of a suit when it has sufficient information to locate and defend the suit). On January 5, 2009, Crawford added Guadalupe as a defendant to a suit in which Belhaven was already a party. Eight days later, on January 13, Lopez called Richardson to discuss Guadalupe's potential liability. Thus, there is no dispute that Belhaven knew of Crawford's claim against Guadalupe and elected not to defend it. It cannot fault either Guadalupe or Crawford for this failure.
¶ 39 At oral argument, counsel for Belhaven argued that a tender was necessary because it was Belhaven's "pattern and practice" not to defend Guadalupe in personal injury suits until it received a written tender of defense from Guadalupe.[3] This assertion is not borne out by the record. Belhaven undertook Guadalupe's defense in Brown , No. 07-L-4665 (Cir. Ct. Cook County), and in Hammonds , No. 07-L-1410 (Cir. Ct. Cook County), but the record is silent as to whether Guadalupe made a tender of defense in either case. More importantly, as discussed, the purchase agreement does not condition Belhaven's assumption of liabilities on the tender of defense by Guadalupe, who was not, in any event, a party to that agreement. Accordingly, Belhaven's argument in this regard lacks merit.
¶ 40 With these considerations in mind, we proceed to examine the arguments of the parties.
¶ 41 Effect of Guadalupe's Rule 216 Admissions
¶ 42 Crawford initially contends that the trial court erred in finding that she was bound by Guadalupe's Rule 216 admissions. We agree.
¶ 43 Under Rule 216, a party may serve a request to admit facts on any other party, and if the other party fails to either deny the facts or object to the request within 28 days, the facts are deemed admitted. Ill. S. Ct. R. 216(c) (eff. July 1, 2014). But such admissions cannot be used against any party in the litigation other than the defaulting party. Banco Popular v. Beneficial Systems, Inc. , 335 Ill. App. 3d 196, 208-09, 269 Ill.Dec. 389, 780 N.E.2d 1113 (2002). In Banco , the counterplaintiff served requests to admit on three parties: Marsha, BPT, and BPM. (Marsha and BPT were counterdefendants, while BPM was a third-party defendant.) BPT and BPM denied the requests, but Marsha failed to reply. Counterplaintiff then argued that Marsha's admission was binding, not only on her but also on BPT and BPM, because they all " 'speak with one voice.' " Id. at 207, 269 Ill.Dec. 389, 780 N.E.2d 1113. Banco rejected that argument, holding that one party's Rule 216 admissions cannot be used against another party in the litigation. Id. at 208-09, 269 Ill.Dec. 389, 780 N.E.2d 1113 (citing *774 Rowe v. State Bank of Lombard , 247 Ill. App. 3d 686, 695-96, 187 Ill.Dec. 312, 617 N.E.2d 520 (1993) (when one party makes Rule 216 admissions to another party, those admissions may only be used between those two parties in that suit; they do not affect any other party to the suit or any other proceeding) ). Banco also noted that counterplaintiff did not cite any law to the contrary. Id. at 208, 269 Ill.Dec. 389, 780 N.E.2d 1113.
¶ 44 Belhaven, like the counterplaintiff in Banco , does not cite any authority holding that Rule 216 admissions of one party may properly be imputed to another party. Belhaven nevertheless argues that imputation is proper based upon third-party beneficiary law. Belhaven reasons that if a contract is entered into for the direct benefit of a third party, the third party may sue for breach of the contract in her own name, even though she is not a party to the contract. Olson v. Etheridge , 177 Ill. 2d 396, 404-05, 226 Ill.Dec. 780, 686 N.E.2d 563 (1997). As a corollary to this principle, "the promisor can assert against the beneficiary any contractual defense that the promisor could assert against the promisee." Greeling v. Abendroth , 351 Ill. App. 3d 658, 664, 286 Ill.Dec. 292, 813 N.E.2d 768 (2004).
¶ 45 Belhaven argues that, since Crawford, as an alleged third-party beneficiary of the 2006 purchase agreement, is seeking to enforce that agreement, Belhaven can assert any defense against Crawford that it could assert against Guadalupe. But, as discussed, Guadalupe was not a party to the 2006 purchase agreement, as Belhaven admitted in its answer to Crawford's complaint ("Guadalupe Economic Services Corporation (the Mortgagor) * * * was not a party to the contract."). Belhaven's argument is therefore spurious.
¶ 46 Moreover, the principle articulated in Greeling applies to "any contractual defense." (Emphasis added.) Id. ; see also XL Disposal Corp. v. John Sexton Contractors Co. , 168 Ill. 2d 355, 366, 213 Ill.Dec. 665, 659 N.E.2d 1312 (1995) ("[A] promisor may assert as a defense to the third-party beneficiary's claims under the contract the absence of mutual assent or consideration, lack of capacity, fraud, mistake and the like." (Internal quotation marks omitted.) ). Belhaven cites no authority that extends this principle to Rule 216 admissions. Nor would such a rule be equitable. The purpose of Rule 216 is to expedite litigation by removing the necessity of proof at trial for matters that are not in dispute. Jordan v. Bangloria , 2011 IL App (1st) 103506, ¶ 27, 359 Ill.Dec. 298, 966 N.E.2d 986. This is consistent with the general goals of the discovery process, which are "to do justice and to not allow discovery to become a 'trap for the unwary' and to resolve disputes on the merits either through trial or settlement." Armagan v. Pesha , 2014 IL App (1st) 121840, ¶ 27, 379 Ill.Dec. 722, 7 N.E.3d 148. By contrast, Belhaven is attempting to weaponize Rule 216 by using it to resolve disputed matters and thereby avoid resolving those matters on their merits. Since Crawford could not answer requests to admit that were served upon Guadalupe, Belhaven's proposed rule would leave Crawford without a way to dispute the allegations at issue, regardless of the actual facts. This is exactly the kind of "trap for the unwary" that is improper in the discovery process. We therefore decline to depart from the holding of Banco and Rowe that Rule 216 admissions made by one party may not be imputed to another party in the litigation.
¶ 47 Mitigation of Damages
¶ 48 Belhaven next argues that summary judgment was proper because Guadalupe failed to mitigate its damages in the underlying suit. We disagree and *775 additionally observe that Belhaven, as the party on the hook for any judgment in Crawford's case, should have done all of the things it faults Guadalupe for failing to do. Accordingly, it is Belhaven's inaction that is the proper focus for purposes of summary judgment.
¶ 49 Under the doctrine of avoidable consequences, a plaintiff in a breach of contract suit cannot recover losses that could reasonably have been avoided. Boyer v. Buol Properties , 2014 IL App (1st) 132780, ¶ 67, 387 Ill.Dec. 344, 22 N.E.3d 389 (citing Restatement (Second) of Contracts § 350 (1981) ). Belhaven argues that Guadalupe could have avoided all damages if it had tendered its defense to Belhaven or, alternately, litigated the underlying suit itself. Belhaven further argues that Guadalupe's failure to mitigate its damages is fatal to Crawford's claim because she is litigating in Guadalupe's shoes. But, as discussed, Crawford is not litigating in Guadalupe's shoes, and therefore Guadalupe's alleged failure to mitigate its damages does not preclude Crawford's recovery.
¶ 50 Relatedly, Belhaven argues that the equities are on its side because Guadalupe sat back and did nothing to avoid a $1.5 million default judgment. But Belhaven is equally guilty of sitting back and doing nothing. Belhaven knew Guadalupe lost the nursing home property in foreclosure and was no longer doing business in Illinois at time Crawford filed her lawsuit. Belhaven also knew that it had assumed Guadalupe's tort liabilities pursuant to the 2006 purchase agreement. Finally, Belhaven knew that Guadalupe was named as a defendant no later than January 13, 2009, when Lopez called Richardson and Richardson assured her that the suit was "the responsibility of Belhaven." Under those circumstances, Belhaven must have been aware that if it did nothing to defend Guadalupe, judgment would likely be entered against Guadalupe. Particularly since Belhaven controlled the personnel involved in and records related to patient care, there is no reason it would assume that Guadalupe would undertake its own defense. But the record does not disclose any efforts by Belhaven to defend Guadalupe. Rather, after Guadalupe failed to appear, Belhaven obtained its own dismissal from the action and left Guadalupe defenseless.
¶ 51 Belhaven attempts to shunt blame onto Crawford for voluntarily dismissing Belhaven from the action, "thereby precluding Belhaven's ability to defend against Ms. Crawford's claims." But it is disingenuous at best for Belhaven to imply that it was dismissed against its will, since it had pending a motion for dismissal based on the fact that it did not own the nursing home at the time of Duke's injury and death. Moreover, Belhaven was not dismissed until October 20, 2009, several months after Guadalupe was found in default on April 27, 2009. Based on the record before us, Belhaven has only itself to blame for its own inaction.
¶ 52 As a concluding note, we observe that Guadalupe's damages may not have been as readily avoidable as Belhaven suggests. Crawford brought a timely suit against Belhaven on June 30, 2008, less than two years after Duke's death on July 2, 2006. See 735 ILCS 5/13-202, 13212(a) (West 2006) (two-year statute of limitations for personal injury suits and actions against physicians and hospitals). She added Guadalupe as a defendant on January 5, 2009. Belhaven argues that Guadalupe (or Belhaven litigating on Guadalupe's behalf) could have raised the statute of limitations as a complete bar to recovery. But it is at least arguable that Crawford's amended complaint would relate back to the date of her original, timely complaint. Id. § 2-616(d); see also *776 Zlatev v. Millette , 2015 IL App (1st) 143173, ¶ 56, 397 Ill.Dec. 826, 43 N.E.3d 153 (plaintiff's lack of knowledge regarding a party's involvement in the wrongdoing giving rise to her cause of action may constitute a " 'mistake concerning the identity of the proper party' " for purposes of section 2-616(d) ). And since liability for any judgment rested with Belhaven, Guadalupe could not claim prejudice as a result of the delay. Thus, it is by no means certain that Guadalupe and Belhaven could have successfully defended the underlying suit on the ground that it was not timely filed.
¶ 53 Crawford's Standing to Bring Suit
¶ 54 As an alternative ground for affirmance, Belhaven argues that Crawford was not an intended third-party beneficiary of the 2006 purchase agreement and therefore lacks standing to bring suit. We find no merit in this argument.
¶ 55 Under Illinois law, not every third party who benefits from a contract can sue for its breach. Carlson v. Rehabilitation Institute of Chicago , 2016 IL App (1st) 143853, ¶ 14, 401 Ill.Dec. 768, 50 N.E.3d 1250. A third party has rights under a contract only if she is an intended beneficiary, i.e. , someone whom the parties intended to directly benefit by the performance of the contract. Id. ; F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C. , 372 Ill. App. 3d 89, 96, 309 Ill.Dec. 865, 865 N.E.2d 228 (2007). By contrast, an incidental beneficiary has no rights under a contract and lacks standing to sue to enforce its terms. Carlson , 2016 IL App (1st) 143853, ¶¶ 14-15, 401 Ill.Dec. 768, 50 N.E.3d 1250.
¶ 56 In determining whether a third-party beneficiary is intended or incidental, courts consider the language of the contract and the circumstances surrounding its execution. Id. ¶ 14. Because parties typically enter into contracts to benefit themselves rather than third parties, there is a presumption against intended beneficiary status that "can only be overcome by an implication so strong as to be practically an express declaration." Estate of Willis v. Kiferbaum Construction Corp. , 357 Ill. App. 3d 1002, 1008, 294 Ill.Dec. 224, 830 N.E.2d 636 (2005). But the contract does not need to specifically name the third-party beneficiary as long as it adequately defines a class of individual beneficiaries. Id.
¶ 57 The June 30 addendum to the purchase agreement, which Crawford attached to her complaint, provides as follows:
"[Belhaven] shall assume any and all debts, obligations, claims, and other liabilities, whether known or unknown, relating to the operations of Belhaven Nursing Home, both prior to and after the Closing Date * * *; EXCEPT [Belhaven] shall not be assuming the payment of any management fees owed the Long Hill Company, any accrued payroll or benefits, or the insurance deductibles involving the following residents: Johnny Williams and Louise Pool."
According to Crawford's complaint, as of June 30, 2006, Louise Pool and the estate of Johnny Williams each had a pending personal injury action against Guadalupe and the nursing home. The insurance deductibles referred to in the addendum are for those personal injury actions.
¶ 58 Based on the June 30 addendum, we find that Crawford is an intended beneficiary. As this court has stated, "if the promisee bargains with the promisor to render a performance directly to a third party, in nearly every case the promisee will have intended to benefit that third party." Advanced Concepts Chicago, Inc. v. CDW Corp. , 405 Ill. App. 3d 289, 293, 345 Ill.Dec. 138, 938 N.E.2d 577 (2010). By assuming Guadalupe's liabilities, Belhaven necessarily agreed to render a performance to third parties to whom Guadalupe *777 owed money. Thus, those third parties are intended beneficiaries. Moreover, on its face, the contract includes the assumption of tort liabilities, because two personal injury plaintiffs-and no others-are explicitly excluded from its terms.
¶ 59 This case is analogous to XL Disposal , 168 Ill. 2d 355, 213 Ill.Dec. 665, 659 N.E.2d 1312, in which the court found an intended third-party beneficiary relationship existed. XL Disposal sold a waste disposal facility to Sexton. As part of the sale contract, Sexton agreed to pay certain sums of money to a third party, Blair, on a monthly basis for as long as Sexton continued to operate the facility. Id. at 357, 213 Ill.Dec. 665, 659 N.E.2d 1312. Regarding this arrangement, our supreme court stated:
"The term conferred upon Blair, who was not a party to XL Disposal's and Sexton's contract, a direct benefit: monthly payments from Sexton. That made Blair a third-party beneficiary of the asset sale agreement.
* * * The asset sale contract and the addendum it incorporates as a term plainly show Blair to be an intended-as opposed to an incidental-third-party beneficiary of the asset sale contract between XL Disposal and Sexton." Id. at 361, 213 Ill.Dec. 665, 659 N.E.2d 1312.
Likewise, the 2006 purchase agreement conferred a direct benefit upon Guadalupe's creditors: payment from Belhaven. Accordingly, these creditors were intended, rather than incidental, beneficiaries of the contract.
¶ 60 Belhaven argues that Crawford cannot be an intended third-party beneficiary because she initiated the underlying suit in 2008, two years after the purchase agreement was executed. But "a third-party beneficiary contract may exist even if the beneficiary is not named, not identifiable, or not yet in existence, so long as the beneficiary is identifiable or in existence when the time for performance arrives." Board of Education of Community School District No. 220 v. Village of Hoffman Estates , 126 Ill. App. 3d 625, 629, 81 Ill.Dec. 942, 467 N.E.2d 1064 (1984) ; see also Gothberg v. Nemerovski , 58 Ill. App. 2d 372, 387, 208 N.E.2d 12 (1965) ("The fact that plaintiffs' identity may not have been known at the time the contract to procure insurance was made does not prevent them from assuming the status of third party beneficiaries"). In the purchase agreement, Belhaven agreed to assume Guadalupe's liabilities "whether known or unknown" and "both prior to and after the Closing Date." Thus, although Crawford is not specifically named in the contract and Belhaven did not know of her claim until after the closing date, the language of the contract makes clear that Crawford is part of the class of intended beneficiaries. See Willis , 357 Ill. App. 3d at 1008, 294 Ill.Dec. 224, 830 N.E.2d 636 ("It is not necessary that the contract specifically name the third-party beneficiary if it adequately defines a class of individual beneficiaries.").
¶ 61 Belhaven also argues that this case is analogous to Altevogt v. Brinkoetter , 85 Ill. 2d 44, 51 Ill.Dec. 674, 421 N.E.2d 182 (1981), in which our supreme court held that homeowners were not intended third-party beneficiaries of a contract between the builder and the party who commissioned the building of their house. Brinkoetter hired Hinton to build a house on his land. After the house was built, Brinkoetter sold the premises to the Altevogts. Later, the Altevogts sued Hinton for defects in the house, alleging that Hinton breached the contract by failing to build the house in a reasonably workmanlike manner. But the Altevogts did not attach the contract to their complaint, nor did they otherwise include it in the record, and they failed to allege facts from which the *778 court could conclude that the contract was intended to benefit them. Id. at 52-53, 51 Ill.Dec. 674, 421 N.E.2d 182. Upon these facts, our supreme court held that the Altevogts were not intended beneficiaries of the contract. Id. at 53, 51 Ill.Dec. 674, 421 N.E.2d 182. The court further stated, "[W]e do not believe that Hinton's knowledge that a third party would occupy the house establishes that the plaintiffs were direct beneficiaries." Id. at 56, 51 Ill.Dec. 674, 421 N.E.2d 182.
¶ 62 Altevogt is distinguishable for two reasons. First, unlike the Altevogts, Crawford attached the contract to her complaint, and, as discussed, an intention to benefit third parties such as Crawford is manifest from the text of the contract. Second, Belhaven had more than a passive awareness that third parties would benefit from its contract with U.S. Bank; rather, Belhaven agreed to confer a direct benefit on them by satisfying any debts, known or unknown, that Guadalupe might owe them. See XL Disposal , 168 Ill. 2d at 361, 213 Ill.Dec. 665, 659 N.E.2d 1312 ; Advanced Concepts Chicago , 405 Ill. App. 3d at 293, 345 Ill.Dec. 138, 938 N.E.2d 577.
¶ 63 Accordingly, we agree with the trial court's finding that Crawford, as an intended third-party beneficiary of the contract between Belhaven and U.S. Bank, had standing to bring suit against Belhaven for its alleged breach of that contract.
¶ 64 Statute of Limitations
¶ 65 Finally, Crawford argues that the trial court erred in finding that the statute of limitations on her claim was 5 years rather than 10 years. For its part, Belhaven argues that the trial court made this finding in the context of denying Crawford's motion for summary judgment. Although an order denying a motion for summary judgment is interlocutory and is generally not appealable because any error merges into the court's final judgment ( In re Estate of Funk , 221 Ill. 2d 30, 85, 302 Ill.Dec. 574, 849 N.E.2d 366 (2006) ; Kroot v. Chan , 2017 IL App (1st) 162315, ¶ 10, 417 Ill.Dec. 859, 89 N.E.3d 778 ), there is an exception when the summary judgment motion presents a legal issue and the court's final judgment did not deal with the issue raised in the summary judgment motion. Regency Commercial Associates, LLC v. Lopax, Inc. , 373 Ill. App. 3d 270, 280, 311 Ill.Dec. 636, 869 N.E.2d 310 (2007) ; Battles v. La Salle National Bank , 240 Ill. App. 3d 550, 558, 181 Ill.Dec. 365, 608 N.E.2d 438 (1992). Therefore, the court's denial of Crawford's summary judgment motion is properly reviewable by this court. And because this issue is likely to be raised on remand, we elect to address it now. See Pielet v. Pielet , 2012 IL 112064, ¶ 56, 365 Ill.Dec. 497, 978 N.E.2d 1000.
¶ 66 Actions on written contracts typically have a 10-year period of limitations ( 735 ILCS 5/13-206 (West 2016) ), while actions on oral contracts have a 5-year period of limitations (id. § 13-205). But even where a contract is in writing, the contract will be treated as oral for purposes of the statute of limitations if essential terms of the contract are not ascertainable from the written contract itself. Kranzler v. Saltzman , 407 Ill. App. 3d 24, 28, 347 Ill.Dec. 519, 942 N.E.2d 722 (2011) ; Portfolio Acquisitions, L.L.C. v. Feltman , 391 Ill. App. 3d 642, 647, 330 Ill.Dec. 854, 909 N.E.2d 876 (2009).
¶ 67 This principle is illustrated in Brown v. Goodman , 147 Ill. App. 3d 935, 101 Ill.Dec. 530, 498 N.E.2d 854 (1986). Brown sold property to Kuhny pursuant to a written contract. The contract provided that Brown had a five-year option to repurchase the property, and any sale to a third party would be subject to Brown's right of purchase. Id. at 936-37, 101 Ill.Dec. 530, 498 N.E.2d 854. A year later, *779 Kuhny sold the property to Goodman. Brown sought to exercise his option. When Goodman refused to sell the property to Brown, Brown sued him for breaching the option agreement.
¶ 68 Even though the original contract between Brown and Kuhny was in writing, the trial court held, and the appellate court agreed, that the applicable period of limitations was five years. Id. at 941, 101 Ill.Dec. 530, 498 N.E.2d 854. Brown explained:
"[T]he option agreement does not name Goodman as a party to the contract. The option agreement merely states that the terms of the option are binding on a 'third party' purchaser. The existence of any contractual relationship between Brown and Goodman can only be established by going outside of the option agreement and resorting to extrinsic evidence." Id.
Because extrinsic evidence was required to properly interpret the terms of the contract, it was properly treated as an oral contract with a limitations period of five years. Id. ; see also Portfolio Acquisitions , 391 Ill. App. 3d at 652, 330 Ill.Dec. 854, 909 N.E.2d 876 (credit card contract was an oral contract for purposes of statute of limitations where parol evidence would be required to show the terms of the contract and defendant's acceptance of those terms).
¶ 69 The 2006 purchase agreement is analogous to the contract in Brown . Belhaven's contractual obligation to Crawford, if any, cannot be determined purely from within the four corners of the contract because Crawford is not identified by name. The contract merely states that Belhaven will assume "any and all debts, obligations, claims, and other liabilities" related to the operation of the nursing home. Extrinsic evidence is needed to establish that Crawford obtained a judgment against Guadalupe and therefore has a right to sue on the contract.
¶ 70 Crawford argues that since the 2006 purchase agreement was a contract for the sale of land, it was required to be in writing under the statute of frauds. 740 ILCS 80/2 (West 2016). But "a writing that satisfies the statute of frauds requirements does not necessarily satisfy the statute of limitations definition of a written contract." Toth v. Mansell , 207 Ill. App. 3d 665, 673, 152 Ill.Dec. 853, 566 N.E.2d 730 (1990). Even though a contract meets the statute of frauds, it is considered oral for purposes of the statute of limitations if essential terms of the contract cannot be ascertained from the written instrument. Id. at 673-74, 152 Ill.Dec. 853, 566 N.E.2d 730. Such was the case in Brown , which, like the present action, involved a contract for the sale of land that was nevertheless subject to a five-year limitations period. Brown , 147 Ill. App. 3d at 941, 101 Ill.Dec. 530, 498 N.E.2d 854. Accordingly, we affirm the trial court's finding that the five-year period of limitations for oral contracts applies to this action.[4]
¶ 71 CONCLUSION
¶ 72 The trial court granted summary judgment to Belhaven based on its finding that, in the underlying suit, Guadalupe failed to either defend itself or tender its defense to Belhaven. For the reasons discussed, we find that neither of these conditions is a prerequisite to Crawford's recovery.
*780 Moreover, Guadalupe's Rule 216 admissions cannot properly be imputed to Crawford. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings.
¶ 73 Reversed and remanded.
Justices Pucinski and Hyman concurred in the judgment and opinion.

Crawford also added U.S. Bank as a defendant, but she dismissed her claims against U.S. Bank on August 14, 2014, and those claims are not at issue in this appeal.

Service was apparently effected by mailing the requests to admit to Lopez, at a Texas address, and to Guadalupe's counsel, Marta Rosas, also at a Texas address. A third copy was mailed to Crawford's counsel, but the requests to admit were addressed solely to Guadalupe.

We note that this is the reverse of the position that Belhaven took in its brief, in which it stated, "It remains unclear why the circumstances of [counsel for Belhaven's] representation in other cases are relevant to this Court's consideration of whether Guadalupe ever tendered its defense of the underlying litigation to Belhaven."

We note in passing that the distinction between 5 and 10 years is likely immaterial under the facts of this case, since it appears Crawford brought suit within 5 years of Belhaven's refusal to satisfy the June 28, 2010, judgment against Guadalupe. See Newell v. Newell , 406 Ill. App. 3d 1046, 1051, 347 Ill.Dec. 573, 942 N.E.2d 776 (2011) (breach of contract action accrues when breach of contractual duty occurs).